UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK C. KELLY,

    Plaintiff,

v.                                                Case No. 1:17-cv-640

                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).[1]

Plaintiff alleged a disability onset date of July 31, 2013. PageID.183. Plaintiff identified his disabling conditions as: chronic obstructive pulmonary disease (COPD); coronary artery disease; osteoarthritis; dyspnea; irritable bowel syndrome; hypertension; carpal tunnel; "spinal disc herniation/impingement on crossing left C8"; "multilevel disc degneration/spondylosis (MRI report)"; and chronic pain and fatiguing. PageID.187. Prior to applying for DIB, plaintiff completed two years of college, and had past employment as a generator repairman, shuttle driver, and diesel injection repair tech. PageID.87-88. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on

---

[1] This action was filed by plaintiff's counsel, Attorney Garold A. Goidosik. The Court allowed counsel to withdraw upon a stipulation of the parties. Order (ECF Nos. 13 and 14). The Court amended the briefing schedule to allow plaintiff additional time to file his initial brief. Order (ECF No. 15). Plaintiff filed a timely *pro se* brief (ECF No. 16) which is now before the Court.

1

May 3, 2016. PageID.33-44. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of

July 13, 2013, and met the insured status requirements of the Social Security Act through September 30, 2016. PageID.35.

At the second step, the ALJ found that plaintiff had severe impairments of COPD, spine disorder, essential hypertension, right hand carpal tunnel syndrome, and osteoarthritis. PageID.35. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry, push and pull 20 pounds occasionally, and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for six hours; can occasionally climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; can tolerate frequent right upper extremity handling and fingering; and can tolerate occasional exposure to humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and extreme heat and cold.

PageID.37. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.43.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.43-44. Specifically, the ALJ found that plaintiff could perform unskilled, light work in the national economy such as inspector tester or sorter (135,000 jobs), machine operator (174,000 jobs), and stock clerk order filler (226,000 jobs). PageID.43-44. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 31, 2013 (the alleged onset date) through May 3, 2016 (the date of the decision). PageID.44.

## III. DISCUSSION

Plaintiff's brief did not include a statement of errors as required by the Court. Nevertheless, the Court gleans three issues from plaintiff's filings[2]:

### A. The ALJ erred in evaluating plaintiff's ability to breathe

Plaintiff contends that the ALJ misunderstood his testimony regarding breathing difficulties. Plaintiff states that he told the ALJ that his breathing was "under control," by which he meant that it was controlled while he was "at rest." According to plaintiff, "[a]ny physical exertion [sic] my breathing is labored and my oxygen level drops dramatically." PageID.564.

The record does not support plaintiff's contention. The ALJ's summary of plaintiff's testimony is consistent with plaintiff's claim that he has breathing problems due to physical exertion:

> He has chronic obstructive pulmonary disease and asthma and takes medications, which improve his breathing, but does not cure shortness of breath. He says he has breathing problems with exertion.

PageID.39.

The ALJ summarized the medical records with respect to plaintiff's breathing problems as follows:

> Spectrum Health records revealed Mr. Kelly followed up on his chronic conditions of asthma, hypertension, chronic back pain, and irritable bowel syndrome in August 2013. He was "in a pretty cheerful mood right now" and said he quit his job yesterday. He was still smoking, but "the asthma is doing very well." Breath sounds were clear and he had "no evident dyspnea walking about here and talking." Smoking cessation was discussed, but he was not interested in stopping. His blood pressure was "doing fine." He said he "feels pretty well" in December 2013 and his "back situation under control." He cited he had a job for a few weeks through a temporary agency. Dietary changes and exercise were "needed." Lungs were clear and he remained on Advair consistently. In general, his asthma was "doing very well" in June 2014. He alleged "short of breath on stairs, but not

---

[2] The Court considered plaintiff's *pro se* brief (ECF No. 16) and a letter sent from his (then) attorney John Dreiser to the Appeals Council (ECF No. 16-1). Plaintiff's brief mentions the ALJ's evaluations of his ability to breathe and his irritable bowel syndrome. The errors raised by Attorney Dreiser relate to the ALJ's use of the grids.

otherwise" (Exhibit 4F). In September 2014, he had been drinking again, up to three drinks per day. He expressed interest in quitting smoking. Pulmonary function testing revealed a moderate obstructive defect with a forced expiratory volume of 1.98 or 63% of predicted and a forced vital capacity of 3.82 or 93% of predicted. Following bronchodilator administration, there was significant improvement in the forced expiratory volume, which increased by 14%. His lung volumes were normal and his diffusion capacity was mildly impaired at 66% of predicted. He was "strongly encouraged and counseled on tobacco cessation and provided some advice." He declined pulmonary rehabilitation "due to financial concerns as a result of the cost of gas" (Exhibit 5F).

PageID.39.

The medical records do not indicate that plaintiff is disabled by a breathing problem. Plaintiff reported in June 2014 that he was short of breath on the stairs but "not otherwise." PageID.348. At that time, the medical provider noted "Definitely not short of breath here today, walks about easily in the office, talks without any breathlessness." PageID.348. In September 2014, plaintiff reported to a pulmonary specialist that "[h]e becomes short of breath with activities such as climbing stairs and riding a bicycle." PageID.366. As the ALJ noted, despite these complaints, plaintiff declined pulmonary rehabilitation. PageID.368.

Based on this record, the ALJ's decision regarding the extent of plaintiff's breathing problems is supported by substantial evidence. While the ALJ found that plaintiff suffered from severe impairments of both COPD and asthma, he noted that "[n]o treating or examining physician noted any significant abnormalities or assigned any restrictions." PageID.38. In this regard, the ALJ accounted for plaintiff's breathing problems in the residual functional capacity (RFC), which limited plaintiff: to occasionally climbing ladders, ropes, and scaffolds; to frequently climbing ramps and stairs; and, to tolerating only occasional exposure to humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and extreme heat and cold. PageID.37. Accordingly, the Court finds no error with respect to the ALJ's evaluation of plaintiff's breathing.

Finally, plaintiff introduces new claims in his brief: that in 2017 he made four trips to doctors regarding his breathing; that Medicaid took away his Advair medication; that his primary care physician prescribed a new medication; and that he is using a breathing machine 2 to 3 times a day with an albuterol solution. Plaintiff's Brief at PageID.564. When a claimant submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g).

In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id*. In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "The party seeking a remand bears the burden of showing that these two

7

requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Here, plaintiff has failed to show that the new evidence is material. As an initial matter, while plaintiff's brief refers to his medical treatment in 2017, he has not presented copies of the medical records which he seeks to add to the record. The Court cannot grant a sentence-six remand without reviewing the proposed "new evidence" which plaintiff seeks to add to the administrative record. Second, even if plaintiff had presented copies of this evidence, he has not established that the evidence is material to his condition as it existed when the ALJ entered the decision on May 3, 2016. Based on plaintiff's representations, the evidence reflects his condition as it existed on the date he filed the brief (November 20, 2017), about 1½ years after the ALJ's decision. Such evidence is not relevant to his claim. "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). *See, e.g., Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does not reveal further information about the claimant's ability to perform light or sedentary work in December 1983"). In short, even if plaintiff had requested a sentence-six remand, and presented the supporting medical records for his condition in November 2017, he would not be entitled to a remand in this case.

> B. **The ALJ erred by considering plaintiff's rejection of additional treatment for irritable bowel syndrome.**

Next, plaintiff contends that the ALJ did not properly evaluate his irritable bowel syndrome (IBS). The ALJ summarized plaintiff's testimony on the subject as follows:

> He has had irritable bowel syndrome since he was a small child and goes to the bathroom five to eight times a day. He has to watch what he eats and has to get up during the night sometimes to go to the bathroom. He has flare up [sic] and all he can think about is getting to the bathroom.

PageID.38-39. The medical records summarized by the ALJ mention no particular treatment for his irritable bowel syndrome. The only reference to the digestive tract was a visit to an emergency room in September 2015 "with constant nausea and fever." PageID.40. It appeared that this was related to alcohol consumption:

> He reported stress related to his recent move to Tennessee. He stated he drinks three beers and three "liqueur and cordial" drinks daily. Per his wife, the claimant drinks beer, liquor, and wine, "heavily up to a gallon per day." His "wife apologizes for patient's behavior in ED. Wife notes that patient has been drinking excessively."

PageID.40.

In his brief, plaintiff recounted the following interaction with the ALJ:

> The ALJ also contends that I was resistive because I rejected further treatment from Dr. Cammell. Dr. Cammell had prescribed several different medications for me that only changed the timing of my movements, so I elected to stop seeing her. I've had IBS my entire life and to my knowledge, there is no cure.

PageID.565. Plaintiff is apparently referring to the ALJ's determination that his IBS was not a severe impairment:

> Although the claimant had been diagnosed with irritable bowel syndrome, in August 2013 his primary care provider noted that the claimant had "strong opinions" and was "not interested in expert advice on his intestinal issues." In June 2014, his irritable bowel syndrome was "stable, under control he says" (Exhibit 4F).

PageID.35.

In the medical record referenced by the ALJ, plaintiff's primary care physician made the following statement with respect to plaintiff's irritable bowel syndrome:

> Reviewed history of lifelong symptoms, etc., last fall he saw Dr. Cammell. He is now indicating that none of the advice or findings of Dr. Cammell were worthwhile et cetera. I am not inclined to think further about this problem. He has

9

> strong opinions and is not interested in expert advice on his intestinal issues. He occasionally uses the Levbid 0.375.

PageID.326.

The ALJ did not commit error with respect to his evaluation of the scant medical record related to plaintiff's irritable bowel syndrome. That record reflects that plaintiff has had the condition since he was a child, that he was employed for a number of years with this condition, and that he declined medical advice related to the condition. Accordingly, the Court finds no error in the ALJ's evaluation of plaintiff's irritable bowel syndrome.

### C. The ALJ improperly applied the grids

Plaintiff incorporates arguments made to the Appeals Council by one of his previous attorneys that the ALJ failed to properly apply the grids and that he should have been found disabled under the grids. The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grids. "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person

is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). As the Sixth Circuit explained:

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

Here, the ALJ did not apply the grids, but used them as a framework for finding other work at the fifth step of the sequential evaluation:

> [A]lthough the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 202.15 and Rule 202.07.

PageID.44.

Plaintiff contends that the ALJ failed to properly apply the grids in Table II (Rule 202 of Appendix 2 to Subpart B of Part 404). Attorney Letter (ECF No. 16-1. PageID.567). Specifically,

> The ALJ erred as a matter of law in finding that the claimant had transferable skills with a direction of not disabled under Rule 201.07 instead of applying Rule 201.06 since his skills were not transferrable outside of the area of auto tech for which the VE testified that the claimant could not do the work based on the Residual Functional Capacity ("RFC") adopted by the ALJ because of only occasional exposure to fumes, odors, dust, gases, poor ventilation and extreme heat and cold.

PageID.567. In a related argument, plaintiff's former attorney stated that the ALJ failed to properly weigh the opinions of the consultative examiner and plaintiff's testimony, which if properly weighed "would have resulted in the sedentary RFC and finding of disabled under the Grids." *Id*.

Plaintiff's contentions are without merit. As defendant points out, the grids do not apply to plaintiff because he has numerous nonexertional impairments. Defendant's Brief (ECF No. 17, PageID.579-580). In this regard, the Social Security Rulings ("SSRs") define "nonexertional" as a term of art:

> Any functional or environmental job requirement which is not exertional is "nonexertional." In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments may or may not significantly narrow the range of work a person can do. In the SCO, where specific occupations have critical demands for certain physical activities, they are rated for climbing or balancing; stooping, kneeling, crouching or crawling; reaching, handling, fingering, or feeling; talking or hearing; and seeing. Occupations are also rated for certain environmental conditions (e.g., high humidity or excessive dust).

SSR 83-14 (1983 WL 31254 at *1). Nonexertional activities include "[m]aintaining body equilibrium; using the fingers and finger tips to work with small objects; using the eyes and ears to see and hear; and using the vocal apparatus to speak." *Id*. at *2. SSR 83-14 also refers to nonexertional limitations due to the work environment:

> Working conditions (environmental demands) which a person may not be able to tolerate as a result of an impairment include exposure to extremes of heat or cold, humidity, noise, vibration, hazards, fumes, dust, and toxic conditions. Physical limitation of function may be linked with an environmental restriction (e.g., a respiratory impairment may diminish exertional capacity as well as restrict a person to types of work not requiring exposure to excessive dust or fumes).

*Id*.

The record reflects that plaintiff has numerous nonexertional limitations with respect to: climbing; balancing; stooping; kneeling; crouching; crawling; handling; fingering; and exposure to humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and extreme heat and cold. PageID.37. Because plaintiff suffered from these nonexertional limitations, the ALJ could not find him disabled under the grids. *See Cole v. Secretary of Health & Human Services*, 820

F.2d 768, 775 (6th Cir. 1987) (it is error for an ALJ to rely on the grids when the claimant has "significant nonexertional limitations"). Accordingly, this claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 20, 2018 /s/ Ray Kent
United States Magistrate Judge